REYNOLDS MORTGAGE CO. et al. v.
THOMAS et ux.

No. 11199.

Court of Civil Appeals of Texas. Dallas.
April 1, 1933.

Rehearing Denied June 17, 1933.

Goss & Rooney, of Chicago, Ill., and Samuels, Foster, Brown.& McGee, of Fort Worth, for appellants.

Bishop & Holland, of Athens, for appellees.

JONES, Chief Justice.

From an adverse judgment in the district court of Henderson county, appellants, Reynolds Mortgage Company, a Texas corporation, and the North American Life Insurance Company, a foreign corporation, have duly perfected this appeal. Appellants, W. P. Thomas and wife, in whose favor judgment is rendered, reside in Henderson county. The material facts are:

On May 17, 1921, the Reynolds Mortgage Company, with its principal office in the city of Fort Worth, made a loan of $3,000 to appellees. This loan was evidenced by a principal note of $3,000, executed by appellees on said date in favor of the Reynolds Mortgage Company, and by its terms matured on November 1, 1930. This note provided for 7½ per cent. interest per annum, payable annually on the 1st day of November of each year, until its maturity. The annual interest was evidenced by ten coupon notes for the amount of interest; one coupon note being payable on November 1, 1921, and the other nine being payable on each succeeding November 1st until maturity of the principal note. Contemporaneously appellees executed an additional note in the sum of $709.-15, payable in ten installments, the first installment in the sum of $34.15, payable on November 1, 1921, and thereafter an annual installment of $75, payable on each succeeding November 1st until the entire note was paid; the last installment being due November 1, 1930. This note represented additional interest, at the rate of 2½ per cent. per annum on the $3,000 loan. As evidenced by the two notes, appellees contracted with the Reynolds Mortgage Company to pay interest at the rate of 10 per cent. per annum for

the use of the $3,000, 7½ per cent. of which was evidenced by the ten coupon notes attached to the $3,000 note, and the remaining 2½ per cent. was evidenced by the installment note in the principal sum of $709.15.

Contemporaneously with the execution of the two notes, appellees executed to C. T. Burns, as trustee for Reynolds Mortgage Company, two deeds of trust on 161½ acres of land, located in Henderson county, as security for the payment of the two notes, one deed of trust creating a first and superior lien to secure the payment of the $3,000 note and interest thereon, and the other deed of trust creating a second and inferior lien to secure the $709.15 note.

The loan contract is evidenced by the four instruments, above described; i. e., a principal note for $3,000, representing the money borrowed, bearing interest at the rate of 7½ per cent. per annum, until maturity, and at the rate of 10 per cent. thereafter, with coupon interest notes attached; a second note, representing 2½ per cent. interest on the money borrowed, and payable in ten annual installments; one deed of trust on land, creating a first lien, to secure the principal note and the attached interest notes; another deed of trust, creating a second lien on the same land, to secure the remaining interest represented by the second note.

The principal note contained the following clause: "And it is hereby agreed, in the making and delivery of this bond, that if anyone of said annexed interest coupons shall remain unpaid for ten days after maturity thereof, or if any covenants or agreements contained in the deed of trust of even date (delivered herewith) be violated, then, at the option of the said payee or holder of this note, the whole principal and interest then accrued shall at once become due and payable, and the holder may proceed to collect the same by foreclosure of the deed of trust given to secure the same, either under the power of sale therein contained, or by suit or other proceedings in court as may be directed."

The second note, after providing for the installment payments as above described, provides for payment of "interest thereon at the rate of ten percentum per annum after due until paid, * * * or after the same is declared to be due under the provisions of the deed of trust securing this note." This note also provides that it is given for a part of the interest on a loan made to appellees by Reynolds Mortgage Company, for the sum of $3,000, and that it is secured by a second mortgage on real estate in Henderson county, Tex. The deed of trust securing the principal note recites: "* * * We (appellees) will pay all taxes and assessments made upon said property when due; * * * that we will pay any taxes that may be here-

after provided for by law, and laid on or assessed against any right, title or interest, or lien on said land created by this instrument and chargeable to the holder of, or of the bond secured hereby, when due; provided, however, that this clause shall not be construed so as to require us to pay interest on the said bond at a rate greater than ten percentum per annum, and should the rate of interest provided for herein in said taxes exceed said rate, then the holder of the bonds secured hereby shall pay such excess."

This deed of trust in another clause recites: "If there should be any failure or default in the performance of any of the covenants or agreements herein contained, or if any part of said debt is not paid when due, or if any interest coupon annexed to the herein described bond remains due and unpaid after maturity, or if we shall fail to pay the taxes assessed against the herein described land, or any interest therein, or lien thereon conveyed or created by this instrument, or chargeable against said bond * * said bond shall become due and payable without further notice. * * *"

The deed of trust creating the second lien to secure the $709.15 note contains a clause which reads: "On the punctual (payment) of the debt secured hereby and the due fulfillment on part of grantors herein of the terms and conditions of this instrument, then same shall be released at expense of grantors, but should default be made in the payment of said debt, or of any part or installment thereof, principal or interest, or in observing and keeping any terms, covenant or condition in said first mortgage lien contained to be kept and observed by grantors herein, then the entire debt and obligation intended to be secured herein shall, at the option of the holder thereof, at the time of such breach or any time thereafter, become due and payable. * * *"

The undisputed evidence shows that, at the time this suit was filed, December 12, 1930, there had been paid as interest on the loan of $3,000 the sum of $2,477.21. This amount represents the payment of matured interest coupons attached to the $3,000 note and matured installments provided for in the $709.15 note. Of the amount of interest paid, $525 was paid on and after January 2, 1929, and prior to December 12, 1930, the date of the filing of this suit. By appropriate allegations in their petition, appellees alleged all of the facts herein stated, and further alleged that these fact allegations show that the loan contract is usurious—in that there could be collected under such contract a rate of interest greater than 10 per cent. per annum. They further allege that, because of such usurious contract, they have the right of credit of all interest payments, as payments on the principal note,

and further that the sum of $525 interest payments was paid within the limit of the two-year statute of limitations, and, being a payment of usurious interest, they are entitled to recover the statutory penalty of double the amount of usurious interest paid, and that they should be decreed to have paid the sum of $1,952.21 interest payments, during the period of more than two years prior to the filing of the suit, together with $1,050 as penalty, in discharge of the $3,000 obligation, making a total of $3,002.21, or $2.21 in excess of the principal obligation. They also contended, by appropriate allegations, that the note for $709.15, representing interest on a usurious contract, is void, and prayed that it should be canceled and held for naught.

In the alternative plea, appellees allege that, if they be mistaken in their right to recover the $1,050 as a penalty, they pray that the said $525 be credited as payment on the note, that the court then adjudge the balance due appellants on the $3,000 note, and that they tender such amount into court, as a discharge of their entire obligation to appellants.

Appellants, in their answer, deny that the loan contract was tainted with usury, deny the right of appellees to have any sum paid as interest credited on the principal note, and deny that any usurious interest either had been contracted for, collected, or demanded. Appellants' theory in respect to the nonusurious character of the contract is given by appropriate allegations in their answer, which support their propositions of law contained in their brief. Appellants did not file a cross-action, or seek to recover any amount from appellees, but claimed that the entire $3,000 obligation and the remaining unpaid interest still exist as a valid claim against appellees.

The Reynolds Mortgage Company, on June 15, 1921, assigned the $3,000 note with the deed of trust lien securing it, and an interest in the $709.15 interest note with same interest in the deed of trust lien securing it, to the North American Life Insurance Company. As agent for the North American Life Insurance Company, the Reynolds Mortgage Company made all collections from appellees on the notes, and remitted to the insurance company all interest payments on the $3,000 note, and the payment due the insurance company on the second note.

The case was tried to the court, and the evidence consisted of the various instruments above described, together with a number of letters in reference to the unpaid interest and a demand for such interest at the specified rate, except where a default in the payment of such interest had existed for a period of ten days, after which time interest was demanded on the unpaid interest at the rate of 10 per cent. per annum. The court rendered judgment, decreeing the contract to be tainted with usury, subjecting the interest payments of $2,477.21 to payment on the $3,000 loan, denied appellees' claim for penalty, gave to appellants judgment against appellees for $522.79, and foreclosed the deed of trust lien securing the $3,000 note. The court decreed the note for $709.15 to be void, because representing interest under a contract tainted with usury and canceled the deed of trust creating the second lien.

The primary question to be determined by this appeal is whether or not the contract for the loan of $3,000 is usurious. If there is no taint of usury in such contract, then appellees are not entitled to any of the credits made by the trial court, and the interest payments só credited must be regarded as legal interest paid for the use of the $3,000. Article 5069, R. C. S. 1925, declares that, "'Interest' is the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." This same article declares that: "'Conventional interest' is that interest which is agreed upon and fixed by the parties to a written contract, not to exceed ten per cent. per annum." Likewise the same article defines usury to be "interest in excess of the amount allowed by law; all contracts for usury are contrary to public policy and shall be void."

In this state, "a contract is usurious when there is a contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts. Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than the legal interest for the use of money, and whether, by the terms of the transaction, and the means used to effect the loan he may, by its enforcement, be enabled to get more than the legal rate." 27 R. C. L. § 24, pp. 223, 224. This declaration of the law of usury is quoted by our Supreme Court in the case of Shropshire et ux. v. Commerce Farm Credit Co. et al., 120 Tex. 400, 30 S.W.(2d) 282, 285, 39 S.W.(2d) 11, and is approved by that court as "a clear statement of the law which governs our decision." See, also, Deming Investment Co. v. Giddens et ux., 120 Tex. 9, 30 S.W.(2d) 287; Commerce Trust Co. v. Best (Tex. Civ. App.) 54 S.W.(2d) 1037; Parks v. Lubbock, 92 Tex. 637, 51 S. W. 322.

The question under consideration assumes this form: Does this loan contract, evidenced by the two notes and the two deeds of trust, clearly provide for a contingency,

upon the happening of which appellants are authorized to exact more than interest at the rate of 10 per cent. per annum? The answer to this question must be determined by the contract rights given appellants in the notes and in the two deeds of trust, for the conditions named in the deeds of trust are referred to, and by such reference adopted by the respective notes whose payments are thereby secured.

It will be noted that appellants have contracted for the maximum rate of interest allowed by law, in that the holder of such principal note is awarded interest from date at the rate of 7½ per cent. per annum, and the remaining 2½ per cent. is represented by the face value of the other note. What rights are given the holder of the principal note? Among them are: (a) To collect the annual interest at the rate of 7½ per cent. per annum on the 1st day of November of each year during the life of the note; (b) if default be made in an annual interest payment for a period of ten days, interest on such payment at the rate of 10 per cent. per annum until it is paid; (c) upon such default, the holder has the right to declare the note due and payable, together with all accrued interest, and, if the holder elects to mature the note because of a default in an annual interest payment, then interest at the rate of 10 per cent. per annum is substituted for the 7½ per cent. rate.

What right is given the holder of the $709.-15 interest note? (a) Such holder is given the right to collect an installment payment on the 1st day of November of each year during the life of the note, and, if such installment is not paid when due, to collect interest from the date of its maturity at the rate of 10 per cent. per annum; (b) if default be made in the payment of any installment, or default be made in any of the covenants contained in the first deed of trust, securing the payment of the principal note, such holder may declare the entire indebtedness represented by this second note due and payable. It must be borne in mind that it is immaterial to the question of usury whether the holder of either of these notes elected to avail himself of the options given, but it is the rights the lender reserves to himself by contract which determine the question of usury. Schropshire v. Commerce Farm Credit Company, supra.

Suppose default in the payment of the fifth coupon note be made and allowed to exist for a period of ten days or more, there is given to the holder the clear right to declare the principal note due, together with accrued interest; also the clear right, when such default occurs, and he has elected to declare the principal note due, to charge 10 per cent. interest on both the unpaid coupon note and the principal note, for the term "maturity,"

when applied to commercial paper, means at "the time when the paper becomes due and demandable; that is, the time when an action can be maintained thereon to enforce payment." 5 Words and Phrases, Third Series, page 36. The holder of the second note is given the clear contract right, because of the default of appellees to pay said interest coupon note, to declare the entire balance of his note due and payable, and to charge 10 per cent. interest on the balance due on said note until it shall be paid. If the right of option be exercised by the holders of the two notes, under such contingency, the time for the use of the $3,000 has been shortened 50 per cent., but the second note, representing 2½ per cent. of the interest charged for the use of the money, is not decreased, and, so far as the portion of the interest represented by said note is concerned, it is the same as it would have been if the time had not been shortened.

It necessarily follows that, if appellants would avail themselves of their contract rights under the above contingencies, appellees would be required to pay a much greater rate of interest than 10 per cent. per annum on the money borrowed, and, under the rule announced by the above-cited cases, this renders the contract usurious. Hence we conclude that there is no error in the action of the court in crediting the principal note with the entire interest paid. Commerce Trust Co. et al. v. Best et al., supra.

Appellants contend that the paragraph in the first deed of trust, declaring that this "clause shall not be construed so as to require us to pay interest on the said bond at a greater rate than ten per cent. per annum, and should the rate of interest provided for herein in said taxes exceed said rate, then the holder of the bond secured thereby shall pay such excess," conclusively shows that, regardless of the provisions in the second deed of trust, the maximum rate of interest is limited thereby to 10 per cent. per annum. The language above quoted is not subject to such construction. The portion of the paragraph immediately preceding this quotation shows conclusively that the application of the clause relied upon was to an entirely different matter. This preceding clause, as shown by the excerpt quoted herein from the first deed of trust, is to the effect that appellees bind themselves to pay any taxes when due that may be hereafter provided for by law and laid on or assessed against any right, title, or interest, or lien on said land, created by the deed of trust and chargeable to the holder of the note. In other words, the clause to which this language is applicable binds appellees to pay any taxes that the law might hereafter require appellants to pay, because of their ownership of this note, provided the payment of such taxes, if consid-

ered as a part of the interest charged for the use of money, cannot increase the interest on the principal note from 7½ per cent. to an excess of 10 per cent. No other meaning can be placed upon this clause.

▮ It does not appear from this record that any usurious. interest was actually paid by appellees, and hence the court did not err in denying appellees' claim for a penalty for double the amount of interest paid on or after January 2, 1930. Article 5073, R. C. S., which provides for a suit for penalty on the payment of usurious interest, restricts such penalty to the usurious interest actually paid. The pleadings of appellees and appellants, when taken together, warrant the judgment rendered in favor of appellees.

For the reasons above stated, we are of the opinion that the lower court did not err in the judgment rendered, committed no error in the trial of this case, and that such judgment should in all things be affirmed.

Affirmed.

On Motion for Rehearing.

PER CURIAM.

Rehearing denied.

LOONEY, Justice (dissenting).

After further consideration, I am convinced that the court erred in holding the loan contract, involved in this controversy, usurious, and in affirming the judgment below.

The contract consists of four parts: The principal note or bond for $3,000, with attached coupons, representing 7½ per cent. interest, and the deed of trust securing same; the second note for $709.15, payable in ten installments, representing 2½ per cent. interest, and the deed of trust (subordinate to the first) securing the latter note. Each note is fair upon its face, and, considered alone, no intention to collect unlawful interest can be found, and, if paid according to its terms, no usurious interest would have been collected; however, the majority construed certain language of the second deed of trust, securing the 2½ per cent. interest note, as furnishing a contingency permitting the exaction of unlawful interest, therefore held the contract usurious.

According to my view, the amount accrued on the interest note for $709.15 would mature on payment, or maturity for any reason, of the principal note, which provides: "That if any one of said annexed interest coupons (representing 7½ per cent. interest) shall remain unpaid for ten days after maturity thereof, or if any covenant or agreement contained in the deed of trust of even date (delivered herewith) be violated, then, at the option of said payee or holder of this bond, the whole principal and interest then accrued shall at once become due and payable. * * *" While this language is broad enough to include and mature all interest accrued on the principal, yet its connection indicates that it refers alone to the accrued portion of the 7½ per cent. coupon notes attached to the bond; however, I am of opinion that the maturity of the principal, in the absence of an express agreement to the contrary, which does not exist in this case, would necessarily mature all accrued interest, without regard to the manner or form in which the same is evidenced, or whether so expressly provided or not. The Austin Court of Civil Appeals announced doctrine, to this effect, in Hughes v. Bryson, 29 S.W.(2d) 898. The court there had under consideration a case where makers executed notes representing the principal with interest coupons attached, also other notes representing part of the interest. The court held that payment of the principal necessarily discharged the notes representing unpaid interest. There, as here, no rights of an innocent purchaser were involved, nor did either the trust deeds or notes contain any express agreement that the exercise of the option to pay principal notes would not cancel other notes. So, applying this rule, in the illustration given in the majority opinion, if the holder of the bond or principal note should have exercised the option to declare same due and payable, all accrued interest, however evidenced, would likewise become due and payable, whether expressly so provided or not; further accrual of interest would then cease, and the contractual rights of the parties would proceed on a different basis; that is, under the terms of the contract, the amount due, principal and accrued interest, after being matured, would, in the future, bear 10 per cent. interest per annum. Under this view, which I believe correct, no taint of usury can be discovered in the loan contract under consideration.

But, aside from this view, I do not think a proper interpretation of the language of the second deed of trust will condemn the contract as usurious. It does not state that, when accelerated, the entire unpaid balance of the interest note shall become due and payable; the language is "that the entire debt and obligation intended to be secured herein shall, at the option of the holder thereof * * * become due and payable." To reach the conclusion arrived at by the majority, the intention to collect unlawful interest is necessarily imputed by construction. Such construction, in my opinion, is not the most reasonable or even a necessary one, but rather that we should hold the intention was simply to mature all interest then accrued on the second note. This construction is in harmony with the express provision of the principal note, providing that: "At the option of said payee or holder

of this bond, the whole principal and interest then accrued shall at once become due and payable." Further indicia of an innocent intention is found in the first deed of trust, which, after obligating grantors to pay, when due, all taxes and assessments against the property, and to maintain improvements in good state of repair, etc., uses this language: "Provided, however, that this clause shall not be construed so as to require us to pay interest on the said bond at a rate greater than ten per centum per annum, and should the rate of interest provided for herein on said taxes exceed said rate, then the holder hereof of the bond secured hereby shall pay such excess."

An unlawful intent will not be imputed where a lawful one may just as consistently be imputed. To constitute usury, there must exist an agreement requiring the borrower to pay, and entitling the lender to receive, a higher rate of interest than that allowed by statute for the loan or forbearance. Starling v. Hammer, 185 Ark. 930, 50 S.W.(2d) 612. Making a loan with intent to take a rate of interest in excess of the statutory rate is an essential element of usury (Lorber v. Marshall, 124 Or. 272, 264 P. 438), and, where the contract is fair on its face, as I think the one under consideration is, an intention to take unlawful interest must clearly appear (Barnhart v. Richardson, 134 Okl. 19, 272 P. 418, 419). A rule of universal application is that, where a contract is capable of two interpretations, one rendering it void, the other valid, the latter will always be adopted. Texas Emp., etc., v. Tabor (Tex. Com. App.) 283 S. W. 779; City of Memphis v. Browder (Tex. Com. App.) 12 S.W.(2d) 160, 161; 6 R. C. L. p. 839, § 229. Gleaned from authorities throughout the country, the general rule is stated in 6 R. C. L. 839, as follows: "If a contract is of doubtful meaning, and one construction would make it legal and another illegal, the courts will adopt that construction which will not impute to the parties an intention to violate the law. Presumptions of the law are in favor of the good faith of all parties to a business transaction, and, if the language of a contract is fairly susceptible of a construction or explanation which renders it valid and enforcible, according to its terms, such construction will be adopted in preference to one which brands it with illegality, and makes it possible for one to repudiate the performance of his promise while demanding full payment of the consideration to be given therefor. * * *"

I do not believe this case can be differentiated, in any material respect, from the case of Walker v. Temple Trust Company, 60 S.W.(2d) 826, decided April 19th, 1933, by the Austin Court of Civil Appeals, in which a similar loan contract was sustained, against the contention that it was usurious and void.

The contract being fair upon its face, for reasons first appearing herein, I think we should hold, as a matter of law, that no contingency is provided therein authorizing appellants to exact unlawful interest; but, if the language employed be susceptible of that interpretation, it is in my opinion also susceptible of a construction that will uphold the contract; hence under the authorities, the latter should prevail.

I am of opinion, therefore that the motion for rehearing should be granted, the judgment of the court below reversed, and judgment here rendered for appellants.